UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| SPIMERICA ACCESS SOLUTIONS, LLC,<br><br>                          Plaintiff,<br><br>v.<br><br>PALAZZANI INDUSTRIE, S.P.A., SPIDER ATLANTIC CORP., DAVIDE PALAZZANI, PAOLA PALAZZANI, FRANCESCO ZOLA, CRISTIAN MARCHINA, and BENJAMIN LEE TAFT,<br><br>                          Defendants,<br><br>DEREK KOONTZ, FRANCISCO NICASIO, and DESMOND VENTER,<br><br>                          Nominal Defendants. | **Case No. 1:23-cv-23222-RNS** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

      Plaintiff, Spimerica Access Solutions, LLC ("Plaintiff" or "Spimerica") by and through their undersigned counsel, submit this memorandum of law in support of their Emergency Verified Motion for Temporary Restraining Order and Preliminary Injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 7.1. In Support, Plaintiff states as follows:

**I.    INTRODUCTION**

      As fully set forth in the Verified Complaint for Injunctive and Other Relief (the "Complaint"), Spimerica is the exclusive distributor of Palazzani Industrie, S.P.A. ("Palazzani") lift machines—complex arial lifts used in construction and other industries—throughout North America pursuant to an exclusive distribution agreement entered into between Spimerica and Palazzani on April 28, 2021 ("EDA"). Since entering into the EDA, Spimerica has invested substantial time and resources to procure facilities, employ and train sales and service people, and

1

develop marketing and distribution channels for Palazzani products that never had any presence in the North American market.

However, an errant email from one of Spimerica's employees to Palazzani exposed a scheme perpetrated by Palazzani, Spider Atalntic Corp. ("SAC"), Davide Palazzani, Paola Palazzani, Francesco Zola, Cristian Marchina (collectively, "Palazzani Defendants") and Spimerica's manager and member Benjamin Lee Taft ("Taft") to drive Spimerica out of business so that Palazzani could terminate the EDA and take over Spimerica's North American distribution business, all while Taft, prior to and after his sudden resignation in May 2023, was supplying the Palazzani Defendants with Spimerica's trade secrets and confidential information, including soliciting Spimerica's employees to join the competing business venture, specifically, defendant Spider Atlantic Corp., which they incorporated in Florida on June 13, 2023.

Plaintiff recognizes the "true emergency" requirement under Local Rule 7.1(d)(1). This application constitutes a "true emergency" because although Palazzani Defendants received the Plaintiff's "cease and desist" letter demanding that they not take the actions that are the subject of the injunction, they have not agreed to do so.[1] Instead, Palazzani Defendants are continuing to establish a new competing business. Palazzani is even using the same address for its "Principal Office Address" that Plaintiff uses in Miami (601 Brickell Key Drive, Suite 700, Miami, FL), a Regus virtual office that provides mail forwarding services to clients, which is now creating brand confusion. In fact, on August 29, 2023, Regus forwarded SAC's mail to Plaintiff, apparently thrown off by the use of the word "spider" in SAC's name, since Plaintiff is in the business of selling "spider lifts". Accordingly, Plaintiff will be harmed irreparably if Palazzani continues its efforts to open its new competing business without restriction, and as such, this is a true emergency.

## II. FACTUAL BACKGROUND

For a full recitation of the facts, the Court is respectfully referred to the Background Facts of the Verified Complaint (*See* Compl. ¶¶ 20-104), the Declaration of Arthur Charles Poulter dated August 15, 2023, the Declaration of Christopher D. Collins dated August 17, 2023, Declaration of Vlad Sidoren dated August 30, 2023 and the exhibits annexed thereto.

---

[1] Palazzani's New York attorney, Frank Ciano, Esq., has not communicated with Plaintiff's counsel since having a very brief phone call on August 22, 2023, for purposes of discussing settlement, which went nowhere.

### III.  ARGUMENT

#### A.  Spimerica has Established the Elements for Entry of a Temporary Restraining Order and/or Preliminary Injunction

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Toyota Lease Trust v 310 Motor Group LLC*, 2023 US Dist LEXIS 122529, at *5 (SD Fla July 14, 2023, No. 23-21476-CV-WILLIAMS/REID).  To obtain injunctive relief, Plaintiff must demonstrate: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Id.* (citing to *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 [11th Cir. 2005]).

When seeking an injunction, "a party [] is not required to prove [its] case in full", and thus, "all of the well-pleaded allegations [in a movant's] complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true." *Interim Healthcare, Inc. v. Interim Healthcare of Se. Louisiana, Inc.*, 2020 U.S. Dist. LEXIS 101841, at *23 (S.D. Fla. June 10, 2020).  As addressed in turn below, Plaintiffs have established the requisite elements for a temporary restraining order and a preliminary injunction.

#### B.  Plaintiff Has a Substantial Likelihood of Prevailing on the Mertis

First, and "generally the most important factor in the preliminary injunction analysis", a substantial likelihood of success on the merits requires "a showing of only likely or probable, rather than certain, success." *Garcia v Stillman*, 2023 US Dist LEXIS 33301, at *7 (SD Fla Feb. 28, 2023, No. 22-cv-24156-BLOOM/Otazo-Reyes).  Here, Plaintiff satisfies the first element because Plaintiff is likely to succeed on the merits on its claims asserted in the Complaint against Defendants, who engaged in conduct aimed at undermining the business of their exclusive distributor in North America, thereby defeating the very purpose of the EDA, secretly established a competing business, solicited Plaintiff's employees to join its competing business, and misappropriated Plaintiff's confidential information to use to establish its new competing business.

1. **Tortious Interference with Plaintiff's
   <u>Contractual Relationship with Taft and Palazzani</u>**

The elements of tortious interference with a contract or business relationship are: "(1) the existence of either a contract or a business relationship between the plaintiff and a third party, (2) the defendant's knowledge of the contract or business relationship, (3) the defendant's intentional and unjustified interference with the contract or business relationship, and (4) damage to the plaintiff." *Dick's Sporting Goods, Inc. v. Forbes/Cohen Florida Properties, L.P.*, No. 9:20-CV-80157, 2020 U.S. Dist. LEXIS 54722, at *6 (S.D. Fla. Mar. 30, 2020); *see also United Subcontractors, Inc. v. Godwin*, 2012 US Dist LEXIS 63114, at *5 (SD Fla May 4, 2012, No. 11-81329-CV-HURLEY) (stating that "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing . . . the third person not to perform the contract, is subject to liability to the other . . . ."). Plaintiff has established each element of tortious interference with respect to Plaintiff's contractual relations with Taft and Palazzani.

As to Taft, the Complaint identifies three contracts between Plaintiff and Taft, the "Spimerica OA, the Taft Employment Agreement, and the Separation Agreement", which contained restrictive covenants that the Palazzani Defendants had knowledge of. (*See* Compl. ¶¶ 20-29, 31-36, 69-72, 106-108). However, the Palazzani Defendants intentionally and unjustifiably interfered with Plaintiff's contractual relations with Taft by inducing Taft to breach the restrictive covenants in the agreements for the purpose of harming Plaintiff and put it out of business. (*See* Compl. ¶¶ 57-103, 109-111).

In pursuit of their tortious interference, the Palazzani Defendants solicited Taft's advice and support to wrongfully acquire Plaintiff's confidential information and used the information to conspire against Plaintiff, which said scheme included planning Taft's resignation from Plaintiff, soliciting Plaintiff's other employees to resign *en masse* and accept competing employment, and opening a competing distribution business in North America under the Palazzani Defendants' direct management. (*Id.*) Indeed, the Palazzani Defendants' conduct has crippled Plaintiff, causing it to have a mass exodus of employees, become overloaded with inventory, and suffer damages in excess of $25,000,000. (*See* Compl. ¶¶104, 112). Accordingly, the Palazzani Defendants must be enjoined from engaging Taft, in any capacity, for the benefit of competing with Plaintiff's sale of Palazzani products in North America.

Likewise, Plaintiff had, and continues to have, a contractual relationship with Palazzani that is memorialized in an EDA. (*See* Compl. ¶¶37-41, 114). With full knowledge of the terms of the EDA, Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina formed SAC for the purpose of intentionally and unjustifiably interfering with the rights granted to Plaintiff under the EDA by engaging in a competing distribution business in North America. (*See* Compl. ¶¶104, 115-117).

Specifically, SAC, Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina, working in concert with Taft, perpetrated a scheme against Plaintiff by soliciting its entire sales team to resign, and thereafter, flooding it with inventory that they knew would take months to sell, but which Plaintiff would be required to pay for net 60 days. (*See* Compl. ¶¶118-121; Collins Decl.; Poulter Decl.). Indeed, the intent was to sabotage Plaintiff's contract with Palazzani and manufacture a default under the EDA so that Palazzani could extricate itself from the EDA and start a new competing distribution business in North America. (*See* Compl. ¶122). Accordingly, SAC, Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina must also be enjoined from competing with Plaintiff's sale of Palazzani products in North America and interfering with the exclusive distribution rights under the EDA that Plaintiff bargained for and invested millions to establish in North America.

### 2. Palazzani Materially Breached The EDA and the Implied Covenant of Good Faith and Fair Dealing

"To state a claim for breach of contract under Florida law, a plaintiff must establish each of the following elements: (1) a valid contract; (2) a material breach; and (3) damages." *Ostrow v. Globecast Am. Inc.*, 2011 US Dist LEXIS 117889, at *49 (SD Fla Oct. 13, 2011, No. 10-61348-CIV). Moreover, Florida law recognizes the implied covenant of good faith and fair dealing in every contract; however, a claim of a breach of the implied covenant must be maintained on an allegation that an express term of the contract has been breached. *See Five Five Five Realty Holdings, Inc. v. GLL BVK Props., LP*, 2010 US Dist LEXIS 146963, at *9 (SD Fla June 8, 2010, No. 09-61888-CIV-GOLD). "A party alleging a breach of an implied covenant of good faith must allege a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other

5

party." *Al-Saadi v. Annchery Fajas USA, Inc.*, 2021 US Dist LEXIS 258930, at *19 (SD Fla Sep. 28, 2021, No. 20-cv-23937).

Here, Plaintiff and Palazzani entered into the EDA, which is a valid and enforceable agreement that granted Plaintiff the *exclusive right* to distribute Palazzani products in North America. (*See* Compl. ¶¶37-41, 125-127). However, Palazzani materially breached the EDA, and engaged in conscious and deliberate acts aimed at undermining and destroying the business of its exclusive distributor, so that it could establish its own competing business, *i.e.*, SAC, which interfered with Plaintiff's business and caused it to suffer damages in excess of $25,000,000. (*See* Compl. ¶¶57-103, 128).

In breaching the expressed right granted to Plaintiff to sell Plazzani produces in North America, Palazzani also breached the implied covenant of good faith and fair dealing by undermining Plaintiff's business in secretly soliciting Plaintiff's employees to work directly for Palazzani or SAC and depleting its sales team, and flooding Plaintiff with inventory to manufacture a default under the EDA, which would allow Palazzani to extricate itself from the EDA by terminating the agreement or by Plaintiff going out of business. (*See* Compl. ¶¶57-103, 130-132; Collins Decl.; Poulter Decl.).

Accordingly, Plaintiff has been damages in excess of $25,000,000 and is likely to succeed on its claims for breach of contract claim and breach of the implied covenant of good faith and fair dealing against Palazzani.

### 3. Taft Materially Breached the Agreements with Plaintiff

It is well settled Florida law that restrictive covenants are a valid means for a company to protect its proprietary interest in its customers, workforce and confidential information. *See* Fla. Stat. § 542.335. Valid restrictive covenants protect a company's legitimate business interests, including (1) trade secrets, (2) valuable confidential business and professional information, (3) relationships with specific prospective or existing customers or clients, (4) customer or client goodwill, and (5) specialized training. *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir. 2009); Fla. Stat. § 542.335(1)(b). As long as restrictive covenants are reasonable in scope, enforcement by injunction is proper. *Id*; *see also*, *AutoNation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1208 (S.D. Fla. 2004) ("the Florida Legislature has expressly recognized that violations of restrictive covenants cannot adequately be remedied by money damages alone and may therefore be enforced through injunctive relief"). The violation of an enforceable restrictive

6

covenant creates a presumption of irreparable injury to the party seeking enforcement of the restrictive covenant. *Proudfoot Consulting Co.*, 576 F.3d at 1240 (citing Fla. Stat. § 542.335[1][j]). Thus, a "court shall enforce a restrictive covenant by any appropriate and effective remedy" which includes "temporary and permanent injunctions." *Id.* at 1242.

Here, the restrictive covenants in the Agreements must be enforced against Taft to prevent irreparable harm because the covenants are reasonable in scope and were violated by Taft, whose messages reveal that he willingly participated in meetings with Plaintiff's employees and the Palazzani Defendants to provide them with "professional advice". (*See* Compl. ¶¶ 94, 101-102) Plaintiff and Taft entered into three valid and enforceable agreements, namely the Spimerica OA, the Taft Employment Agreement, and the Separation Agreement, which Taft has materially breached causing damage to the Plaintiff. (*See* Compl. ¶¶ 20-29, 31-36, 69-72, 165-166).

As alleged in the Complaint, Taft materially breached the agreements by *inter alia*, (a) misappropriating property of Spimerica; (b) secretly working with the Palazzani Defendants while under the employment of, and serving as Manager of Spimerica under the Spimerica OA, to undermine Spimerica's sales in an attempt to force it out of business so that Taft could work directly with Palazzani; (c) inserting the Taft Poison Pill clause in the EDA Amendment without authority or consent of Spimerica's other manager, Sidoren, or approval of its other member, SLS; (d) improperly soliciting Spimerica's employees in violation of the Separation Agreement by encouraging them to resign from their employment with Spimerica and join SAC; and (e) disclosing and using "confidential information", as defined in the agreements, and Protected Trade Secret Information to assist Palazzani Defendants in establishing a competing business, SAC. (*See* Compl. ¶¶ 168-169; Collins Decl.; Poulter Decl.).

Indeed, Taft's breaches have resulted in irreparable harm to Plaintiff that warrants, preliminary injunctive relief under Florida law. *See*, *e.g.*, *United Subcontractors, Inc.* 2012 U.S. Dist. LEXIS 67061 (granting temporary injunction against a former employee who left to work for a competitor, to enforce a restrictive covenant agreement which was reasonably necessary to protect the former employer's legitimate business interest within the geographic area); *see also*, *AutoNation, Inc.*, 247 F. Supp. at 1305 (preliminary injunction to enforce non-compete agreement was granted against former manager who had access to plaintiff's internal business performance reports, policies, procedures, systems, programs and practices).

Thus, Plaintiff is likely to succeed on the merits on its claim for breach of contract against Taft, and under the circumstances, Florida law recognizes that preliminary injunction is warranted to protect Plaintiff's proprietary interest in its customers, workforce and confidential information.

### 4. Palazzani Defendants and Taft Misappropriated Spimerica's Trade Secrets

To establish a claim of trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), Plaintiff must "plausibly allege that it (i) 'possessed information of independent economic value' that (a) 'was lawfully owned by' the plaintiff and (b) for which the plaintiff 'took reasonable measures to keep secret,' and (ii) the defendant[s] 'used and/or disclosed that information,' despite (iii) 'a duty to maintain its secrecy.'" *777 Partners LLC v. Pagnanelli*, 2022 US Dist LEXIS 208294, at *23 (SD Fla Nov. 16, 2022, No. 20-20172-CIV-MARTINEZ/AOR). Likewise, the Florida Uniform Trade Secrets Act ("FUTSA") provides a cause of action for the misappropriation of trade secrets. Fla. Stat. §§ 688.001–009. To prevail on a claim under the FUTSA, Plaintiffs must show that (1) they possessed a trade secret and (2) the secret was misappropriated. *See Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1297 (11th Cir. 2018).

Under the DTSA and FUTSA, a trade secret is any information that a plaintiff has taken reasonable measures to keep secret, that derives independent economic value from not being generally known, and that is not readily ascertainable through proper means. *See* 18 U.S.C. § 1839; *see also SMS Audio, LLC v. Belson*, 2016 US Dist LEXIS 195790, at *7 (SD Fla Aug. 15, 2016, No. 9:16-cv-81308-MIDDLEBROOKS) (explaining that "[c]ustomer lists can constitute trade secrets"); *see also Marlite, Inc. v. Eckenrod*, No. 09-22607-Civ, 2011 WL 39130, at *5 (S.D. Fla. Jan. 5, 2011) (holding that customer lists and pricing information held to be trade secrets under FUTSA).

Here, by virtue of Taft's employment with Plaintiff, he gained access to certain confidential information, including, but not limited to, Plaintiff's business marketing strategies, financial reporting information, sales data, and customer lists. (*See* Compl. ¶¶ 134-135). As alleged in the Complaint, the information is neither readily ascertainable to Defendants (or to Taft but for his employment at Plaintiff) or any other Plaintiff competitor or the general public, nor available to them through proper means, and derives independent economic value for Plaintiff. (*See* Compl. ¶¶ 136-137, 140).

Indeed, Plaintiff obtains significant economic benefits with respect to its competitors because of this information. (*See* Compl. ¶¶ 138-139). Plaintiff's client lists, client financial information, and confidential financial information are trade secrets that Palazzani Defenfants and Taft have improperly disclosed and/or used, resulting in significant harm to Plaintiff. (*See* Compl. ¶¶ 141-145). The details of Plaintiff's customer lists and its financial information are valuable and guarded trade secrets, keeping this information secret by prohibiting their dissemination outside of Plaintiff and by prohibiting the use of such information for any purpose other than promoting further business with Plaintiff.

However, in violation of Taft's duties to Plaintiff, Taft misappropriated and delivered to Palazzani Defendants Plaintiff's trade secrets. Defendants continue to have possession, custody, and/or control of Plaintiff's confidential customer information, financial information and other proprietary information, and have used those records despite the duty to keep those records secret. *See* 18 U.S.C. § 1839(6)(A) (defining "improper means" to include "breach of a duty to maintain secrecy"); *SMS Audio, LLC*, 2016 US Dist LEXIS 195790, at *3 (explaining that "'improper means' includes . . . breach or inducement of a breach of a duty to maintain secrecy" [internal quotation marks and citations omitted]). Additionally, while still employed by Plaintiff, Taft disclosed to the Palazzani Defendants and misused Plaintiff's trade secrets to solicit Plaintiff's employees to join their new venture, in express violation of the EDA. (*See* Compl. ¶¶ 141-145, 150-154).

Indeed, Plaintiff is substantially likely to succeed on the merits of its claim against Taft and Palazzani Defendants' for misappropriation of Plaintiff's trade secrets under the DTSA and FUTSA. Moreover, Plaintiff has suffered and continues to suffer irreparable harm as a result of the tortious and wrongful acts of Defendants absent injunctive relief. Thus, the circumstances warrant the granting of a temporary restraining order and preliminary injunction.

5. **Taft Breached his Fiduciary Duties Owed to Plaintiff and the Palazzani Defendants are Liable for Aiding and Abetting Taft's Breach**

A claim for breach of fiduciary duty contains three elements: (1) the existence of a fiduciary duty; (2) its breach; and (3) damages proximately caused by the breach. *JetSmarter Inc. v. Benson*, 2018 US Dist LEXIS 60122, at *15-17 (SD Fla Apr. 6, 2018, No. 17-62541-CIV-MORE). Moreover, to state a claim for aiding and abetting breach of fiduciary duties, a plaintiff must show: "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3)

knowledge of the breach by the alleged aider and abettor, and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." *Bayport Fin. Serv. USA Inc. v Bayboston Mgrs.*, LLC, 2023 US Dist LEXIS 36851, at *30 (SD Fla Mar. 3, 2023, No. 1:22-cv-21306-JEM/Becerra).

Indeed, "[e]ach manager of a manager-managed limited liability company and member of a member-managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company." *Partners Biomedical Solutions, LLC v Saltsman*, 2021 US Dist LEXIS 177713, at *33 (SD Fla Sep. 17, 2021, No. 19-cv-81316). "It is [also] well-established under Florida law that an employee owes a fiduciary duty and a duty of loyalty to his or her employer." *JetSmarter Inc. v Benson*, 2018 US Dist LEXIS 60122, at *16 (SD Fla Apr. 6, 2018, No. 17-62541-CIV-MORE) (stating that an employee may not "engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment.")

Here, Taft unquestionably owed a fiduciary duty to Plaintiff through his employment, and as a manager and member of Plaintiff. (*See* Compl. ¶¶ 20-36, 156-157). As such, Taft held a position of trust and confidence with regard to the confidential information provided to him for the furtherance of his managerial duties. Taft agreed to keep the foregoing information confidential and that it would not be used for any purpose other than performance and furtherance of Plaintiff's business. (*Id.*).

Likewise, the Complaint sufficiently alleges that Taft breached his fiduciary duty by retaining Plaintiff's confidential information and disclosing that information to the Palazzani Defendants for the purpose of establishing a competing business, harming Plaintiff by causing Plaintiff to have a depleted sales team and become overloaded with inventory. (*See* Compl. ¶¶ 57-104, 158-159, Collins Decl.; Poulter Decl.). Accordingly, Taft has breached his fiduciary duties owed to Plaintiff.

Moreover, the Complaint sufficiently pleads a claim for Palazzani's aiding and abetting Taft's breach of his fiduciary duties that they he knew he owed to Plaintiff by providing substantial assistance to and encouraging Taft's wrongdoing, including soliciting Plaintiff's employees to join the competing business. (*See* Compl. ¶¶ 57-104, 160-161). Indeed, as alleged in the Complaint, the Palazzani Defendants have promised and assured Taft that he would be compensated and have future employment with Palazzani and/or SAC, that he would lead Palazzani's future business in

North America in exchange for assisting and advising the Palazzani Defendants in establishing their North American operations. (*See* Compl. ¶ 162).

Thus, Plaintiff is likely to succeed on its claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty against Taft and the Palazzani Defendants.

### 6. **Palazzani Defendants and Taft Engaged in Unfair Competition**

"In the absence of elements that apply uniformly to all claims of unfair competition, the Eleventh Circuit has endorsed an approach which applies elements appropriate to the underlying acts of the unfair competition claim on a case-by-case basis." *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006), aff'd, 294 Fed. Appx. 501 (11th Cir. 2008) (citing *Manufacturing Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir. 1982) (explaining that an unfair competition claim based on an act of tortious interference has the same elements as a tortious interference claim including "damage to the plaintiff as a result of the defendant's actions"). Generally, to state a claim for unfair competition, a plaintiff "must plead 'deceptive or fraudulent conduct of a competitor' and a likelihood of consumer confusion." *DME Holdings, LLC v. Print Source One*, No. 6:07-cv-1431-Orl-22DAB, 2008 U.S. Dist. LEXIS 141221, at *13 (M.D. Fla. May 5, 2008) (citation omitted). However, unfair competition under Florida law also includes business interference and misrepresentation. *Id.* at 15 (citing *Alphamed Pharm. Corp.*, 432 F. Supp. at 1353).

Plaintiffs have established that Defendants engaged in all the above referenced misconduct which constitutes unfair competition. Namely, the Palazzani Defendants and Taft tortiously interfered with Plaintiff's contractual relations and misappropriated Plaintiff's protected trade secret information for which Plaintiff expended time, labor and money to develop. (*See* Compl. ¶ 171; Point III[B][1], s*upra*).  The Palazzani Defendants and Taft further used Plaintiff's confidential, proprietary and trade secret information to recruit Plaintiff's clients and employees to a competitive venture in North America. (*Id.* at ¶¶ 57-104, 171-172). As a direct and proximate result of Palazzani Defendants and Taft's unfair competition, Plaintiff has suffered significant, irreparable damage to its reputation and goodwill in the market, including among employees. (*See* Compl. ¶¶ 173-175).  Accordingly, Plaintiff is likely to succeed on its unfair competition claims that warrants injunctive relief against Defendants.

### 7. Palazzani Defendants and Taft Engaged in a Civil Conspiracy

Plaintiff is substantially likely to prevail on its claim that the Palazzani Defendants and Taft engaged in a civil conspiracy. The elements of a civil conspiracy are: (1) a conspiracy between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in furtherance of the conspiracy, and (4) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *Sonic Momentum B, LP v. Motorcars of Distinction, Inc.*, 2011 US Dist LEXIS 116520, at *11 [SD Fla Oct. 7, 2011, No. 11-80591-CIV]).

As set forth in the Complaint, Palazzani Defendants have, by concerted actions, agreed to and acted to accomplish an unlawful purpose or to accomplish a lawful purpose by an unlawful means in establishing a competing business in North America by circumventing the EDA in manufacturing a default under the EDA or running Plaintiff out of business. In furtherance of the conspiracy, among other acts, the Defendants have misused Plaintiff's confidential information and have orchestrated a concerted and successful exodus of Plaintiff's sales team, causing harm to the Plaintiff. (*See* Compl. ¶¶ 177-182). Thus, Plaintiff has been irreparably harmed and has established a substantial likelihood of success on its claim that Palazzani Defendants and Taft engaged in a civil conspiracy to harm Plaintiff's business.

### 8. Taft Has Failed to Return the Laptop and Vehicle Title to Their Rightful Owner, Plaintiff

"Under Florida law, the elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *Marcolino v Sweet Home Mobile Home LLC*, 2021 US Dist LEXIS 100555, at *9 (SD Fla May 27, 2021, No. 20-61797-CIV).

Here, Plaintiff will likely succeed on its claim for conversion as it alleges that Taft has wrongfully taken possession, custody and control of title to a vehicle that was purchased by Plaintiff for Taft's use during the course of his employment and a laptop that contains Plaintiff's confidential information. (*See* Compl. ¶¶ 177-182). Indeed, Taft has used and continues to use the vehicle and laptop in an inconsistent manner of Plaintiff's ownership. (*Id.*)

Thus, Plaintiff is likely to succeed on its conversion claim and warrants injunctive relief with respect to the vehicle and laptop.

### 9. The *Ultra Vires* EDA Amendment

Plaintiff is likely to succeed on its claim for relief declaring the Taft Poison Pill, which gave Palazzani "the right to cancel [the EDA] if [Ben Taft] … retire[d] or no longer devote[d] [his] full-time effort, attention or service to [Spimerica]…", *void ab initio*. (Sidoren Decl., Ex. E)

First, under Section 6.1 of the Spimerica OA, Taft was responsible for "hand[ling] the day to day management and operations of [Spimerica]", and had the "right and power to make day to day decisions on behalf of the Company", except any "Major Decisions" that required the consent of both of the appointed Managers, which were Taft and Vlad Sidoren. (Compl. ¶¶ 24-25). Indeed, the Taft Poison was a Major Decision under the Spimerica OA, which Taft proceeded to execute the EDA Amendment without Vlad Sidoren's consent. (Compl. ¶¶ 42-56).

Second, under the Spimerica OA, Taft had a duty to disclose all material facts and his interest in the EDA Amendment to the members of Plaintiff and obtain the members' consent. (Compl. ¶ 50). Indeed, Section 6.6 of the Spimerica OA specifically provides that "[i]f there was no such disclosure or knowledge, [Spimerica] may avoid the contract or transaction." (*Id.*) However, there is no dispute that Taft executed the EDA Amendment without obtaining the informed consent of SLS, the only other member of Plaintiff, or the manager Sidoren, who was unaware of the Taft Poison Pill. (Compl. ¶¶ 42-56). Thus, the EDA Amendment with the Taft Poison Pill included is an *ultra vires* act, which Plaintiff can avoid.

### C. Plaintiff Will Suffer Irreparable Harm if Defendants are Not Enjoined

It is well settled that irreparable harm occurs when there is a threatened or actual loss of clients, employees, or goodwill, particularly where actions by former employees can irreversibly change the status quo. *Confianca Moving v. De Oliveira*, No. 10-23035-CIV-MORE, 2011 U.S. Dist. LEXIS 175122, at *20 (S.D. Fla. Jan. 24, 2011) (quoting *Se. Mech. Services, Inc. v. Brody*, No. 8:08-cv-1151-T-30EAJ, 2008 U.S. Dist. LEXIS 112332, at *15 (M.D. Fla. Oct. 15, 2008) ["There is a need for immediate injunctive relief when employers are threatened by conduct of former employees that would 'irreversibly alter the status quo.'"]); *see also PharMerica, Inc. v. Arledge*, No. 8:07-cv- 486-T-26MAP, 2007 U.S. Dist. LEXIS 19992, at *22 (M.D. Fla. Mar. 21, 2007) (stating that once a competitor company maintains plaintiff's trade secrets which were misappropriated by plaintiff's former employee, "the status quo between the competitors as to that particular information is lost forever").

Indeed, Defendants' disclosure or use of confidential and proprietary information and/or trade secrets constitutes irreparable harm. *See, e.g., Confianca Moving*, 2011 U.S. Dist. LEXIS 175122, at *19 (holding that "[plaintiff] faces the risk of permanent destruction of its existing customer and/or employee relationships, reputation in the industry, and goodwill built up over many years as a result of [d]efendants' actions" and rejected defendants' claims that its competitor "has not yet used nor will it use in the future any of [plaintiff's] information."); *SMS Audio, LLC*, 2016 U.S. Dist. LEXIS 195790, at *14-15 (finding plaintiff's business was likely to be irreparably injured if defendants were not enjoined from using plaintiff's trade secrets and confidential information to compete with plaintiff).

The harm Plaintiff has and will face because of Defendants' use and disclosure of its confidential, proprietary and trade secret information, as well as Defendants' continued solicitation of Plaintiff's customers and employees, is ongoing and will only worsen that may result in Plaintiff being out of business entirely. The Palazzani Defendants have formed a directly competing business, SAC, and are in possession of Plaintiff's Protected Trade Secret Information, including confidential customer lists and financial information. Indeed, Defendants have already used this information to further their business, including to solicit Plaintiff's employees and customers.

Absent an injunction, the value of Plaintiff's Protected Trade Secret Information, as well as Plaintiff's customer goodwill, that cannot be compensated by money damages will be irreversibly lost before a full trial on the merits can be held. *See, e.g., Fibertex Corp. v New Concepts Distribs. Int'l,* 2020 US Dist LEXIS 194383, at *22 (SD Fla Oct. 19, 2020, No. 20-CV-20720-SCOLA/TORRES) (holding that harm to plaintiff's business reputation, goodwill, and brand "cannot be remedied by money damages").

Since the harm being inflicted here is irreparable, an injunction is warranted to preserve the status quo that preceded Defendants' unlawful conduct.

### D. The Balance of Harm Favors Plaintiff, Not Defendants

It cannot be disputed that the balance of harm weighs strongly in Plaintiff's favor. *AutoNation, Inc.*, 347 F Supp 2d 1299 at 1308 (holding that the balance of harm was in Plaintiff's favor because plaintiff's "confidential business information was developed and collected over an extended period of time and at considerable expense to [plaintiff, and] … the use of such

information by a direct competitor would provide an unfair advantage in the competitor's efforts to compete with [plaintiff]).

Indeed, Plaintiff's harm is tangible, quantifiable and will result in a total loss of its investment and of the confidential information it developed in connection with an exclusive right it bargained for in the EDA, namely to sell Palazzani products in North America. By contrast, Defendants will suffer no legitimate harm by enjoining them from: (1) improperly selling Palazzani products in violation of the EDA, (2) further disseminate and/or use Plaintiff's Protected Trade Secrets Information in furtherance of establishing a wrongful competing business, (3) continue to breach, or tortiously interfere, restrictive covenants in the EDA and the Taft Agreements, and/or (4) continue their unlawful conspiracy to unfairly solicit Plaintiff's customers and employees to cause further harm to Plaintiff's business relationships and reputation.

In the event Defendants are not immediately enjoined from engaging in the foregoing wrongful conduct, Plaintiff will be threatened with further substantial, imminent and irreparable harm, including but not limited to, the loss of additional confidential information, business and income, customers, and employees.

### E. The Public's Interest is Served by Protecting Plaintiff's Confidential Information and Preventing Unfair Competition

Florida policy favors the protection of businesses and their trade secrets. *Hatfield v AutoNation, Inc.*, 939 So 2d 155, 157 (Fla Dist Ct App 2006) (holding that "the existence of Florida's trade secret statute illustrates our state's interest in protecting businesses from theft of confidential information."). Florida courts and federal courts therein routinely hold that protecting a business' trade secrets from unlawful use and disclosure serves the public's interest. *See East v. Aqua Gaming*, 805 So. 2d 932, 934 (Fla. 2d DCA 2001) (holding that "an injunction prohibiting a former employee from using trade secrets to solicit existing customers clearly does not disserve the public interest of protecting legitimate business interests."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Silcox*, No. 01-8800-CIV, 2001 U.S. Dist. LEXIS 17241, at *10 (S.D. Fla. Oct. 4, 2001) (holding that "[i]ssuance of a preliminary injunction will promote the public interest in: (i) protection of trade secret client lists and other confidential and trade secret information and (ii) enforcement of reasonable contracts."); *ACR Elecs., Inc. v DME Corp.*, No. 11- 62591-CIV, 2012 U.S. Dist. LEXIS 201353, at *38 (S.D. Fla. Oct. 31, 2012) (holding that "[w]here an employee

uses confidential information gained during his employment in breach of his duty of loyalty, it is appropriate to preliminarily enjoin the employee from further use of that information.").

Since the public interest is served when courts prohibit wrongdoers from absconding with another party's confidential information in order to disseminate it and use it for their own interest – especially against the party from whom it was stolen – Plaintiff's motion seeking an injunction should be granted.

### F. Plaintiff Should Not Be Required to Post a Bond

It is well-established that while the amount of an injunction bond is within the sound discretion of the District Court, "the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). Moreover, where a contract waives requirement of a bond and no significant financial constraints are imposed by an injunction, courts have waived the bond requirement. *See Bahia Bowls Franchising LLC v DJS LLC*, 2023 US Dist LEXIS 34216, at *22 (MD Fla Mar. 1, 2023, No. 2:23-cv-94-JLB-NPM).

Here, in light of Plaintiff's high probability of succeeding on the merits of its claims, Defendants having no legitimate interest in the continued use of Plaintiff's confidential information, proprietary information, or trade secrets, and the waiver of the bond requirement in Section 7.3 of the Spimerica OA and Paragraph 6 of the Taft Employment Agreement, the Court should exercise its discretion to deny any request that Plaintiff post bond *See Harris v. Hous. Auth. of City of Daytona Beach*, No. 6:01-cv-254, 2001 WL 36404273, at *5 (M.D. Fla. Apr. 25, 2001) (not requiring a bond where the preliminary injunction would result in minimal potential harm to the defendant); *Univ. Books & Videos, Inc. v. Metro. Dade County*, 33 F. Supp. 2d 1364, 1374 (S.D. Fla. 1999) (not requiring a bond where the movant had a high probability of succeeding on the merits of its claim).

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court make and enter an Order granting Plaintiff's Emergency Verified Motion for Temporary Restraining Order and Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 7.1(L), and for such further and other relief the Court may deem just and proper, the premises considered.

**CERTIFICATION OF EMERGENCY PURSUANT TO LOCAL RULE 7.1(d)(1)**

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

Dated: August 31, 2023

Respectfully submitted,

BERGER SINGERMAN LLP
1450 Brickell Ave Ste 1900
Miami, FL 33131-3453
Tel. 305-714-4375
*Attorneys for Plaintiff*

By: */s/Jordi Guso*
Jordi Guso
Florida Bar No. 863580
jguso@bergersingerman.com
Marianne Curtis
Florida Bar No. 92729
mcurtis@bergersingerman.com

SITARAS & ASSOCIATES, PLLC
200 Liberty Street, 27th Floor
New York, New York 10281
Tel. (212) 430-6410
*Attorneys for Plaintiff*

By: */s/Gerasimos D. Liberatos*
Gerasimos D. Liberatos
Florida Bar No. 1018621
Liberatos@Sitaraslaw.com

George Sitaras
George@Sitaraslaw.com
(*Admitted Pro Hac Vice*)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 31, 2023, I electronically filed the forgoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record and/or Defendants via electronic transmission of Notices of Electronic Filing generated by CM/ECF and/or via separate email.

By: ___*/s/ Jordi Guso*___
        Jordi Guso, Esq.