United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Spimerica Access Solutions, LLC, Plaintiff, | ) ) ) |
| v. | ) ) |
| Palazzani Industrie, S.P.A., Spider Atlantic Corp., Davide Palazzani, Paola Palazzani, Francesco Zola, Cristian Marchina, and Benjamin Lee Taft, Defendants, | ) ) ) ) ) ) ) |
| and | ) ) |
| Derek Koontz, Francisco Nicasio, and Desmond Venter, Nominal Defendants. | ) ) ) ) |

Civil Action No. 23-23222-Civ-Scola

## Order Granting *Ex Parte* Temporary Restraining Order and Setting Hearing

This matter is before the Court upon the Plaintiff Spimerica Access Solutions, LLC's ("Spimerica") emergency *ex parte* application for a temporary restraining order and preliminary injunction. (Emerg. Appl., ECF No. 20.) Spimerica seeks emergency entry of a temporary restraining order and preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Rule 7.1, against the Defendants Palazzani Industrie, S.P.A. ("Palazzani"), Davide Palazzani, Paola Palazzani, Francesco Zola, Cristian Marchina, and Spider Atlantic Corp. (collectively, the "Palazzani Defendants").[1] The Court has carefully reviewed the motion, the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons set forth below, the Court **grants** the motion. (**Emerg. Mot., ECF No. 20**.)

---

[1] While Spimerica initially sought injunctive relief as to the Defendant Benjamin Lee Taft as well, Spimerica and Taft have since filed a stipulation withdrawing and resolving Spimerica's application as to Taft individually. (J. Stip., ECF No. 21.)

### 1. Factual Background[2]

As set forth in Spimerica's verified complaint, application for a temporary restraining order, and supporting evidentiary materials, on April 28, 2021, Spimerica and Palazzani entered into an exclusive distribution agreement ("EDA") pursuant to which Spimerica became the exclusive distributor of Palazzani lift machines—complex arial lifts used in construction and other industries—throughout North America. (Compl. ¶ 1, ECF No. 1; Emerg. Appl. 2, ECF No. 20.) Palazzani is an Italian company that had no prior presence in the North American market, and, since entering the EDA, Spimerica invested substantial time and resources to procure facilities, employ and train sales and service people, and develop marketing and distribution channels for Palazzani products. (Compl. ¶ 1; Emerg. Appl. at 2.)

On August 2, 2023, however, Spimerica uncovered a vast conspiracy, led by the Palazzani Defendants and Benjamin Lee Taft ("Taft")—Spimerica's former President, Manager and member—to form a new competing distribution business under Palazzani's direct control. (Compl. ¶ 2.) Spimerica uncovered this conspiracy through an errant email from one of Spimerica's employees, Arthur Charles Poulter ("Poulter"), to Zola and Taft. (Emerg. Appl. at 3; Poulter Decl., ECF No. 20-1.) The email exposed the scheme to drive Spimerica out of business, so that Palazzani could sell its Palazzani products directly to customers in North America without interruption.

Specifically, dating back to December 2022, Taft began working in secret with the Palazzani Defendants to undermine Spimerica's business in a systematic, multipronged campaign to drive Spimerica out of business so that Palazzani could terminate the EDA, and take over Spimerica's North American distribution business directly. (Compl. ¶ 3.) The Defendants incorporated the competing business venture, Spider Atlantic Corp. ("SAC"), in Florida on June 13, 2023. (Compl. ¶ 7.) Spimerica ultimately uncovered that Palazzani had been soliciting Spimerica's entire sales team to join Palazanni or SAC for months. (*Id.*; Emerg. Appl. at 3.) The solicitations are evidenced by direct messages exchanged between the Defendants and Spimerica's employees while they were still employed with Spimerica. (Emerg. Appl. at 3; Collins Decl. ¶ 10, ECF No. 20-2.) In addition, after the complaint was filed, Spimerica learned that the Defendants wrongfully obtained Spimerica's proprietary data, including its internal customer and marketing list and price list from former

---

[2] The factual background is taken from Spimerica's complaint, application for a temporary restraining order, and supporting evidentiary submissions.

employee, Koontz, to use in furtherance of their new business in North America. (Emerg. Appl. at 3; Koontz Decl. ¶ 6, ECF No. 20-3.)

On August 31, 2023, Spimerica filed an emergency motion for a temporary restraining order and preliminary injunction, asking the Court to enjoin the Defendants from engaging in any conduct directed at establishing the new competing business venture. (ECF Nos. 11–17.) However, the Court denied the motion upon finding it deficient for multiple reasons. Specifically, the Court explained that the motion failed to comply with the requirements of Southern District of Florida Local Rule 7.1(d)(1), and that it failed to properly address the notice requirements of Federal Rule of Civil Procedure 65.

Spimerica has now renewed its request by filing the emergency *ex parte* application for a temporary restraining order and preliminary injunction that is the subject of the instant order. Spimerica argues that circumstances have changed since the Court denied its initial emergency motion. Specifically, it explains that on September 11, 2023, Spimerica received a notice from Palazzani in which the latter threatened to terminate the EDA and begin selling its products directly to customers in North America, unless Spimerica confirms in writing by September 14, 2023, that it will have staff and employees as allegedly required under the EDA. (Emerg. Mot. at 2–4; Cure Notice, ECF No. 20-4.) Furthermore, Palazzani's notice also demands that Spimerica, by September 14, 2023, confirm in writing that it will pay deposits on certain products by September 18, 2023, but then adds that

> [e]ven if Spimerica confirms that it will take delivery and pay in full for all of the machines identified [t]herein, Palazzani will deem Spimerica's failure and/or refusal to confirm [that Spimerica has the staff to sell Palazzani Products] as evidence of Spimerica's inability to perform its obligations to Palazzani under the EDA and will exercise its rights under the EDA and applicable law, including, but not limited to, termination.

(Cure Notice at 3.) Spimerica posits that, since Palazzani itself has been dismantling Spimerica's sales department by soliciting its employees and causing them to leave their employment, it will be nearly impossible for Spimerica to comply with Palazzani's condition. In other words, even if Spimerica pays the disputed amounts claimed by Palazzani, it will still be defaulted because it cannot possibly hire staff to replace the employees that left the company at Palazzani's prodding and solicitations.

Spimerica's application concludes by arguing that it now stands to suffer immediate and irreparable harm if the Defendants are not enjoined from terminating the EDA and using Spimerica's trade secrets to compete with Spimerica because it will lose its entire business to the Defendants and will no

longer be the exclusive distributor of Palazzani products in North America. (Emerg. Mot. at 4.) In short, if Palazzani proceeds as threatened in its notice, then Spimerica will have lost its entire business as the exclusive distributor of Palazzani products in North America, and any goodwill among customers, and the value the customer list and pricing data once had, will be lost completely. (*Id.* at 2.)

### 2. Legal Standard

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and]
(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974).

### 3. Analysis
### A. Spimerica is Entitled to Entry of a Temporary Restraining Order.

Spimerica brings suit against the Defendants alleging, as relevant here, a count for tortious interference with contract against the Palazzani Defendants (Count One); tortious interference with contract and business relations against SAC, Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina (Count Two); breach of contract and implied covenant of good faith and fair dealing against Palazzani (Count Three); misappropriation of trade secrets in violation of the Defend Trade Secrets Act against the Palazanni Defendants (Count Four); violation of the Florida Uniform Trade Secrets Act against the Palazzani Defendants (Count Five); breach of fiduciary duties and aiding and abetting against the Palazzani Defendants (Count Six); unfair competition

against the Palazzani Defendants (Count Eight); and civil conspiracy against the Palazzani Defendants (Count Nine). (*See generally* Compl., ECF No. 1.)

In support of its application, Spimerica provided the Court with four declarations from employees and former employees (Poulter Decl., ECF No. 20-1; Collins Decl., ECF No. 20-2; Koontz Decl., ECF No. 20-3; Sidoren Decl., ECF No. 20-5); screenshots of various email and other electronic communications between the Defendants and Spimerica's employees and former employees (*see, e.g.*, Exhs. A & B to Poulter Decl., ECF No. 20-1); and a copy of the September 11, 2023, notice letter sent by Palazzani threatening to terminate the EDA (Cure Notice, ECF No. 20-4).

First, the Court finds that Spimerica has shown a substantial likelihood of success on the merits of its two claims for tortious interference. Because of this, and particularly in light of the emergency nature of the relief requested, the Court will limit its analysis of the first element of the preliminary injunction inquiry to those two counts.

"A claim for tortious interference with a contractual or business relationship consists of four elements: 1) the existence of a business relationship between the plaintiff and a third person, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights, 2) the defendant's knowledge of the relationship, 3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform, and 4) damage to the plaintiff resulting from the third person's failure to perform." *DNA Sports Performance Lab, Inc. v. Club Atlantis Condo. Ass'n*, 219 So. 3d 107, 110 (Fla. 3d DCA 2017) (citing *Seminole Tribe of Florida v. Times Pub. Co., Inc.*, 780 So. 2d 310, 315 (Fla. 4th DCA 2001); *see also Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018) (same).

Importantly, Florida courts have held that an independent ground for equitable relief may be found in a claim for tortious interference with contractual relationships. *See Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371, 1376 (Fla. 4th DCA 1987) ("We approve the trial court's finding that some of the activities enjoined constitute or are incident to conduct which constitutes intentional interference with potentially advantageous business relationships, and that the rights thus tortuously violated are entitled to be protected by equitable intervention in the form of a temporary injunction."); *Murtagh v. Hurley*, 40 So.3d 62, 67 (Fla. Dist. Ct. App. 2010) (denying injunctive relief where plaintiff failed to present evidence that demonstrated or allowed an inference that defendant's conduct "had a deleterious effect on" plaintiff's business); *Chevaldina v. R.K./FL Mgmt.*, 133 So. 3d 1086, 1090 (Fla. 3d DCA 2014) (recognizing availability of injunctive relief where plaintiffs

alleged intentional interference with advantageous business relationships); *see also Heavener, Ogier Services, Inc. v. R. W. Florida Region, Inc.*, 418 So. 2d 1074, 1075-76 (Fla. 5th DCA 1982) (finding plaintiff entitled to temporary injunction against tortious interference with contractual relationship).

The Court finds that Spimerica has established a likelihood of success in proving that it had and continues to have a contractual relationship with Taft and Palazzani. Moreover, Spimerica has established a substantial likelihood of success in showing that the Palazzani Defendants knowingly and intentionally engaged in an unjustified interference with Spimerica's relationship with Taft (Count One) and that SAC, Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina knowingly and intentionally engaged in an unjustified interference with Spimerica's relationship with Palazzani (Count Two), with both sets of actions causing damage to Spimerica.

More specifically, the Court finds that the declarations and evidence that the Spimerica submitted in support of its application support the following conclusions of law.

A. With respect to Count One, Spimerca has demonstrated a substantial likelihood of success on the merits. Spimerica has a strong probability of proving at trial that:
   i. Spimerica had and continues to have a contractual relationship with Taft.
   ii. The Palazzani Defendants were fully aware of the contractual relationship between Spimerica and Taft, including, but not limited to, the 2019 Operating Agreement of Spimerica, the Taft Employment Agreement, and the Separation Agreement.
   iii. The Palazzani Defendants were aware that the contracts between Spimerica and Taft contained restrictive covenants that prohibited Taft from, for example, disclosing "Confidential Information" about Spimerica's business plans.
   iv. The Palazzani Defendants' conduct was intentional and not legally justified, causing Taft to breach his contractual obligations to Spimerica.
   v. As a direct and proximate result of the Palazzani Defendants' interference with Spimerica's contractual relationship with Taft, Spimerica has suffered damages.
B. With respect to Count Two, Spimerca also has demonstrated a substantial likelihood of success on the merits. Spimerica has a strong probability of proving at trial that:
   i. Spimerica had and continues to have a contractual relationship with Palazzani, namely, the EDA.

      ii.      Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina were fully aware of the contractual relationship between Spimerica and Palazzani.

     iii.      However, Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina formed SAC, which they own, manage and control, for the purpose of engaging in a competing distribution business in North America, thereby undercutting and interfering with the exclusive distribution rights that Palazzani granted to Spimerica under the EDA.

     iv.      Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina, individually, and acting through SAC, intentionally interfered with Spimerica's contractual relationship with Palazzani and its business relationship with its employees.

     v.      The conduct of Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina, both individually and acting through SAC, was intentional and not legally justified that has interfered with and disrupted Spimerica's rights and obligations under the ED.

     vi.      As a direct and proximate result of Paola Palazzani, Davide Palazzani, Francesco Zola, and Cristian Marchina's deliberate interference with Spimerica's contractual and business relationships, directly and indirectly through SAC, Spimerica has suffered damages.

Moreover, because of the foregoing tortious interference, Spimerica is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in the Spimerica's complaint, application, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to the Spimerica before the Defendants can be heard in opposition unless the Plaintiffs' request for *ex parte* relief is granted:

     i.      The complaint and the Koontz Decl. establish that Spimerica's customer and price lists, which were not previously available to Palazzani in any manner, were misappropriated by the Defendants as part of their scheme to drive Spimerica into default under the EDA so they could take over the distribution of their own products in North America directly. (Compl. ¶ 85, ECF No. 1; Koontz Decl. ¶ 6, ECF No. 20-3.)

     ii.      The threat is imminent because Palazzani stated its intentions in the cure notice, specifically, that it will terminate the EDA if Spimerica does not confirm, *inter alia*, that it has staff in

      compliance with the EDA by September 14, 2023, even though it was Palazzani that caused Spimerica's sales team to resign and seek other employment by improperly soliciting them and spreading false rumors about Spimerica's future. (Cure Notice, ECF No. 20-4.)

   iii.   The Defendants incorporated the competing business venture, Spider Atlantic Corp. ("SAC"), in Florida on June 13, 2023. (Compl. ¶ 7.)

   iv.   Spimerica has uncovered that Palazzani had been soliciting Spimerica's entire sales team to join Palazanni or SAC for months. (*Id.*; Emerg. Appl. at 3.)

In short, if Palazzani proceeds as threatened in its cure notice, then Spimerica will have lost its entire business as the exclusive distributor of Palazzani products in North America, and any goodwill among customers, and the value the customer list and pricing data once had, will be lost completely. (*Id.* at 2.)

      As to the third element of the preliminary injunction inquiry, the balance of potential harm to the Palazzani Defendants in restraining their efforts to open a competing business venture, if a temporary restraining order is issued, is far outweighed by the potential harm to Spimerica, its reputation and goodwill if such relief is not issued.

      Finally, the public interest favors issuance of the temporary restraining order because, among other reasons, protecting Spimerica's contractual and business interests maintains respect for and upholds the integrity of business relations, and disincentivizes conduct of this nature in the future.

      Finally, in light of the inherently deceptive nature of the Palazzani Defendants' conduct, the emergency timeline on which Spimerica's motion is being considered, and the nature of the proprietary information involved, immediate and irreparable injury will result to Spimerica if the instant order is not issued before the Palazzani Defendants can be heard in opposition.

### B. The Court Will Require Service of Process Before the Preliminary Injunction Hearing.

      Spimerica specifically requests that the Court enter a preliminary injunction before the Palazzani Defendants located abroad have been served with process.[3] Specifically, Spimerica argues that Rule 65(a) only requires notice to the adverse party, as opposed to perfected service of process.

      The Court is cognizant that various district courts in the Eleventh Circuit have relied on *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302

---

[3] To date, only SAC and Taft have been served. (*See* ECF Nos. 8 and 10, respectively.)

(5th Cir. 1978) for the proposition that "Rule 65(a) does not require service of process." Putting to one side whether such reliance is proper, *see, e.g., 3M Co. v. Christian Invs. LLC*, No. 1:11cv627, 2011 U.S. Dist. LEXIS 93347, at *19 (E.D. Va. Aug. 19, 2011) (distinguishing *Corrigan* as an interpleader action which has its own rules for preliminary injunctions), the Court does not think it appropriate in this case to render an order on Spimerica's motion for preliminary injunction before the Court has an opportunity to consider the Palazzani Defendant's response, and the Court cannot order the Palazzani Defendants to respond until they have been served process.

Critically, although Spimerica makes much of the fact that many of the Defendants are located overseas and that service via the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention") cannot be effectuated in time for a preliminary injunction hearing, this argument completely ignores the fact that service via the Hague Service Convention is not the only means of service available under the Federal Rules. For example, Federal Rule of Civil Procedure 4(e)(3) contemplates service in a foreign country "by other means not prohibited by international agreement, as the court orders." Service pursuant to Rule 4(f)(3) is neither "a last resort nor extraordinary relief," *see Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002), but the requesting party does need to seek an appropriate court order.

In short, because Spimerica has not shown a compelling reason why service should not be required in this case, and because the Court does not think it appropriate to render a preliminary injunction before ordering the Palazzani Defendants to submit their response, it will require service of process in compliance with Rule 4 in advance of the preliminary injunction hearing.

### 4. Conclusion

For the foregoing reasons, it is **ordered and adjudged** that pursuant Rule 65 of the Federal Rules of Civil Procedure, Local Rule 7.1, and this Court's inherent authority, Spimerica's application for a temporary restraining order (**ECF No. 20**) is **granted** as follows:

(1) The Palazzani Defendants, and its officers, directors, employees, agents, affiliates, subsidiaries, distributors, and all persons or entities in active concert or participation with any of the Defendants, from the date hereof and during the pendency of this action, shall be prohibited and restrained from directly or indirectly:

   a. engaging in the sale, marketing or distribution of Palazzani Products (as defined in the Exclusive Distribution Agreement between Palazzani and Spimerica (the "EDA") in North America,

      except through Spimerica, and from competing with Spimerica, and/or engaging in any acts that would undermine Spimerica's exclusive rights to distribute Palazzani products in North America;

    b. using or disseminating Spimerica's Trade Secret Information, which shall mean any information not publicly available concerning Spimerica's business, including, but not limited to, marketing and sales data, customer lists, customer leads, and/or business or operational plans;

    c. using or disseminating any confidential, trade secret information (that Mr. Zola and others at Palazzani) obtained from the current and former employees of Spimerica, including, but not limited to, Spimerica's customer lists, marketing, sales and cost data, operational data, business plans, and sales leads;

    d. contacting, communicating or soliciting Spimerica's current and former employees including, but not limited to, Mr. Taft, Mr. Collins, Mr. Poulter, Mr. Koontz, for any purpose related to their employment with Spimerica, Spimerica's business, or to solicit information about Spimerica's business; and

    e. taking any action to terminate the EDA, or which would otherwise disturb the *status quo*, and instead shall perform its obligation under, and abide by the EDA, including, but not limited to, continue to provide service, parts, and warranty services to Spimerica and its affiliates.

(2) This order shall go into effect immediately and remain in full force and effect for **fourteen days from the date this order is entered on the docket** or until further order of the Court.

(3) The Court sets a **videoconference hearing** in this matter on **September 27, 2023, at 8:15 am,** at which time the Palazzani Defendants and/or any other affected persons may challenge the appropriateness of this order and move to dissolve the same and at which time the Court will hear argument on the Spimerica's requested preliminary injunction. Login credentials will follow.

(4) Spimerica shall serve a copy of the complaint, the application, and this order, on each Defendant by means reasonably calculated to give notice and in compliance with Federal Rule of Civil Procedure 4.

(5) Any response or opposition to the Spimerica's application for a preliminary injunction must be filed and served on the Spimerica's counsel by **September 25, 2023**, and filed with the Court, along with Proof of Service. The above dates may be revised upon stipulation by all parties and approval of this Court. The Defendants are hereby on notice

that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant Fed. R. Civ. P. 65.

**Done and ordered** in Miami, Florida, on September 14, 2023.

_____
Robert N. Scola, Jr.
United States District Judge